```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE SOUTHERN DISTRICT OF OHIO
                              EASTERN DIVISION
```

**DEALERS ASSURANCE COMPANY,**

       **Plaintiff,**

   vs.                                            Civil Action 2:13-CV-987
                                                           Magistrate Judge King

**FIDELITY BANK AND TRUST,**

       **Defendant.**

<u>OPINION AND ORDER</u>

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Defendant's Motion to Join a Necessary Party or to Dismiss for Failure to Join a Necessary and Indispensable Party*, ECF 17 ("*Motion to Join*").  For the reasons that follow, the *Motion to Join* is **GRANTED**.

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

On August 9, 2001, plaintiff Dealers Assurance Company ("Dealers"), an Ohio corporation, and N.C. & VA. Warranty, Inc. ("NCVA"), a corporation organized under the laws of North Carolina, entered into an agreement whereby Dealers insured NCVA in the event that NCVA defaulted in the payment of warranty claims ("the Insurance Agreement"). *Complaint*, ECF 2, ¶ 3; Insurance Agreement, *Exhibit B* to *Motion to Join*, ECF 19, PAGEID#:161 (filed under seal).  Under the Insurance Agreement, NCVA was to deposit funds as security in the event of NCVA's default.  Insurance Agreement, ¶¶ 6-7, 20.

On November 30, 2009, Dealers, NCVA and defendant Fidelity Bank and Trust ("Fidelity"), a North Carolina corporation, signed an agreement ("the Trust Agreement") whereby NCVA agreed to establish a trust account ("Trust

1

Account") with Fidelity acting as trustee. *Complaint*, ¶¶ 4, 6-7; *Exhibit A* ("*Dealers' Version of Trust Agreement*"), attached thereto. Dealers and Fidelity, however, apparently signed different versions of the Trust Agreement. *Defendant's Answer to Plaintiff's Complaint*, ECF 8, ¶¶ 1-2, 6 ("*Fidelity's Answer to Complaint*")(denying, *inter alia*, that the version of the Trust Agreement attached to the *Complaint* is the Trust Agreement governing the relationship of the parties); *compare Exhibit A*, attached to the *Complaint* with *Exhibit D* ("*Fidelity's Version of Trust Agreement*"), attached to *Affidavit of Alan F. Berliner* ("*Berliner Affidavit*"), attached to *Dealers' Opposition*  According to Dealers, there are four differences between these versions:

> (1) in one document, the Defendant is identified as "The Fidelity Bank and Trust" and in the other it is identified as "The Fidelity Bank," (2) one document deems the Trust Agreement to be for the benefit of the Beneficiary [Dealers], while the other states the Trust Agreement is for the benefit of the Beneficiary [Dealers] and Grantor [NCVA], (3) one document allows the Beneficiary [Dealers] to make withdrawals at any time upon written notice to Trustee [Fidelity], while the other conditions the right to withdraw upon notice to the Grantor [NCVA], and (4) one document lists an amount in Exhibit A to the Trust Agreement [*Trust Agreement – Dealers' Version* lists an amount of $3,985,000.00], the other does not.

*Dealers Assurance Company's Memorandum in Opposition to Defendant's Motion to Join a Necessary Party or to Dismiss for Failure [to] Join a Necessary and Indispensable Party*, ECF 22, p. 4 n.1 ("*Dealers' Opposition*")(citing *Exhibit A*, attached to the *Complaint* and *Exhibit D*, attached to *Berliner Affidavit*). Fidelity also emphasizes that its version of the Trust Agreement permits Dealers to withdraw assets from the Trust Account only upon notice to NCVA, upon written notice to Fidelity and, significantly, upon NCVA's default. *Motion to Join*, p. 4; *Defendant's Reply Memorandum*

2

to Plaintiff Dealers Assurance Memorandum in Opposition to Defendant's Motion to Join a Necessary Party or to Dismiss for Failure to Join a Necessary and Indispensable Party, ECF 26, p. 4 ("*Fidelity's Reply*"); *Fidelity's Version of Trust Agreement*, p. 2.

Apart from these differences, both versions obligated Fidelity, as trustee, to take possession of and hold funds in trust. *See*, *e.g.*, *Complaint*, ¶ 8; *Dealers' Version of Trust Agreement*, pp. 1, 5-6; *Fidelity's Version of Trust Agreement*, pp. 1, 5-6.  The Trust Agreement further required NCVA to maintain the Trust Account in an amount "equal to the sum of the claims reserves, administrative deposits, and loss ratio guarantee deposits specified in the Insurance Agreement[.]"  *Dealers' Version of Trust Agreement*, p. 1; *Fidelity's Version of Trust Agreement*, p. 1.  Fidelity understood that these funds were held in a custodial account at Interactive Brokers.  *Berliner Affidavit*, ¶ 4; *Exhibit A*, PAGEID#:201 (Fidelity's answer to Interrogatory No. 19 of Dealers' First Set of Interrogatories), and *Exhibit C*, PAGEID#:204 (Fidelity's answer to Request to Admit No. 17), attached to thereto.

Dealers alleges that, between 2009 and 2012, Fidelity represented to Dealers that more than $3 million had been deposited with Fidelity in the Trust Account.  *Complaint*, ¶¶ 9-16 (citing *Exhibits B*, *C*, *D* and *E*, attached thereto).  However, in April 2012, Fidelity learned that the custodial account holding the Trust Account had never been opened.  *Berliner Affidavit*, ¶ 4; *Exhibit A*, attached thereto.  Fidelity avers that bank statements sent to Dealers bearing Fidelity's purported letterhead (*see Exhibits B* and *D* attached to the *Complaint*) are forgeries sent by NCVA's

3

financial advisor, Tray Thomas.  *Affidavit of Robin H. Henderson* ("*Henderson Affidavit*"), and *Affidavit of Teresa Gill* ("*Gill Affidavit*"), attached as *Exhibits E* and *F*, respectively, to *Dealers' Opposition*. According to Dealers, Fidelity had never taken possession of any funds for the Trust Account.  *Complaint*, ¶ 17; *Exhibit C*, PAGEID#:204 (Fidelity's answer to Request to Admit No. 17), attached to *Berliner Affidavit*.  In May 2012, following an investigation, Fidelity advised Dealers of a problem with the Trust Account.  *Exhibit A*, PAGEID#:201, attached to *Berliner Affidavit*.

On September 6, 2013, Dealers filed the *Complaint* in the Court of Common Pleas for Franklin County, alleging that Fidelity had reported to it that funds were deposited and remained in the Trust Account when, in fact, no funds had ever been deposited.  Dealers asserts claims of breach of trust, breach of fiduciary duty, violation of Ohio's statutes governing the trust agreement, O.R.C. §§ 5808.10, .13, negligence and breach of contract in connection with Fidelity's alleged failure to hold and maintain funds in the Trust Account and failure to accurately report to Dealers on the status of the Trust Account. *See Complaint; Notice of Removal*, ¶ 1, ECF 1.  Fidelity has denied liability and asserts several defenses, alleging specifically that no Trust Agreement had been formed; that Dealers' alleged loss was a consequence of intervening or superseding actions of third parties for which Fidelity is not legally responsible; that Dealers has unclean hands; and that Dealers' claims are barred by the doctrines of waiver and estoppel. *Fidelity's Answer to Complaint*, pp. 5-6.

On October 2, 2013, Fidelity removed the action to this Court as one

4

arising under the Court's diversity jurisdiction.  *Notice of Removal*.

Fidelity has now moved to join NCVA, grantor under the Trust Agreement, as a necessary party defendant or, in the alternative, to dismiss this action for failure to join a necessary and indispensable party. *Motion to Join*.  Dealers opposes the *Motion to Join*.  *See Dealers' Opposition*.  With the filing of *Fidelity's Reply*, this matter is now ripe for resolution.

**II.  STANDARD**

Fidelity seeks to join NCVA pursuant to Rule 19 of the Federal Rules of Civil Procedure.  The United States Court of Appeals for the Sixth Circuit employs a three-step analysis when determining whether joinder is proper under this rule.  *See*, *e.g.*, *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004); *Laethem Equip. Co. v. Deere & Co.*, No. 10-1994, 485 Fed. Appx. 39, at *43-44 (6th Cir. June 13, 2012).  "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)."  *Glancy*, 373 F.3d at 666.  "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction."  *Id*. "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case [such as destroy diversity jurisdiction], the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable."  *Id*.

**III. DISCUSSION**

    **A.    NCVA Is a Necessary Party under Rule 19(a)**

Under the first step of this three-part test, the Court must determine if the absent person or entity is necessary under Rule 19(a):

> (a) Persons Required to Be Joined if Feasible.
>
>> (1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>>
>>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>>
>>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>>
>>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>>
>>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

As an initial matter, Dealers argues that, although Fidelity contends that NCVA is a required party under Rule 19(a)(1)(B), Fidelity is silent as to whether the Court can accord complete relief among the existing parties in NCVA's absence. *Dealers' Opposition*, p. 6.  Dealers therefore contends that Fidelity has effectively conceded that the Court can. *Id*. This Court agrees.  Fidelity does not invoke Rule 19(a)(1)(A) and its substantive arguments relate to considerations arising under Rule 19(a)(1)(B).  Under these circumstances, the Court concludes that joinder of NCVA is not required under Rule 19(a)(1)(A). *Cf. Reilly v. Meffe*, No. 2:13-cv-372, 2014 U.S. Dist. LEXIS 35988, at *37 (S.D. Ohio Mar. 19, 2014)

("The burden is on the moving party to establish that a party is necessary for purposes of Rule 19(a).").

The Court next considers whether NCVA has "an interest relating to the subject of the action" and whether NCVA's absence from this litigation impairs or impedes its ability to protect its interest or subjects Fidelity or Dealers to "a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). Under this provision of the rule, an absent party need only possess an interest "relating to" the subject matter of the action and need not "have a direct interest *in* the action at bar." *Onyx Waste Servs. v. Mogan*, 203 F. Supp. 2d 777, 786 (E.D. Mich. 2002)(emphasis in the original). For example, a sufficient interest under Rule 19(a)(1)(B) exists where an absent party "could" claim an interest in a contract between existing parties. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 201 (6th Cir. 2001). *See also Prosser v. XTO Energy, Inc*., No. 2:12-cv-0883, 2013 U.S. Dist. LEXIS 59373, at *11 (S.D. Ohio Apr. 25, 2013) ("It is not necessary that the party presently claim an interest in the subject matter of the litigation. If the absent party could claim an interest, that is enough to fall within Rule 19(a)(1)(B).") (citing *PaineWebber, Inc*., 276 F.3d at 201); *Burger King Corp. v. Am. Nat'l Bank and Trust Co. of Chicago*, 119 F.R.D. 672, 675 (N.D. Ill. 1988)(stating that an absent party has a legally protected interest in the subject matter of the action if it "is a party to a contract at issue[.]"). Courts have therefore often concluded that signatories to a contract are necessary parties under Rule 19(a). *See, e.g.*, *OneCommand, Inc. v. Beroth*, No. 1:12-cv-471, 2012 U.S. Dist. LEXIS

122587, at *5 (S.D. Ohio Aug. 29, 2012) ("'[I]n general, the indispensable parties in a breach of contract action[] are the parties to the contract.'") (quoting *Russian Collections v. Melamid*, No. 2:09cv300, 2009 U.S. Dist. LEXIS 113733, at *18 (S.D. Ohio Nov. 18, 2009)); *PrePaid Lab, LLC v. Lab. Corp. of Am. Holdings*, No. 5:11-cv-00509, 2011 U.S. Dist. LEXIS 68010, at *5 (N.D. Ohio June 24, 2011) (finding that absent party was not a necessary party because, *inter alia*, it "is not a signatory to the parties' contract and has no express legal rights or duties pursuant to the contract"). Despite this general finding, however, "Rule 19 should be applied prudently and pragmatically so that entire suits are not dismissed if meaningful relief can still be accorded." *Thornton v. Taylor*, No. 13-cv-309, 2013 U.S. Dist. LEXIS 170989, at *14 (S.D. Ohio Dec. 4, 2013).

In the case presently before the Court, Fidelity contends that NCVA, as the grantor under and signatory to the Trust Agreement, has an interest in the funds that were deposited, but were improperly diverted, or in the "assets that were to be deposited" into the Trust Account. *Motion to Join*, pp. 3, 6-7, 10; *Fidelity's Reply*, pp. 3, 6-7. Dealers disagrees, arguing that NCVA cannot have any interest in the Trust Account because there is no dispute that the Trust Account was never funded. *Dealers' Opposition*, pp. 6-8 (citing, *inter alia*, *Exhibit C*, PAGEID#:204 (Fidelity's answer to Request to Admit No. 17), attached to *Berliner Affidavit*). Because NCVA never deposited any funds, Dealers argues, NCVA has no property interest in the Trust Account that would be impacted by Dealers' recovery. *Id.* at 7.

On the other hand, Fidelity insists that all parties to a contract

8

must be joined as necessary parties, *i.e.*, that NCVA, as grantor under the Trust Agreement, must be joined in this action. *Fidelity's Reply*, pp. 2-6. In support, Fidelity contends that its version of the Trust Agreement requires NCVA's default (as well as notice to Fidelity and to NCVA), which in turn requires Dealers to prove NCVA's breach of the underlying Insurance Agreement before Dealers is entitled to any funds. *Id*. at 4-5; *Motion to Join*, p. 4; *Fidelity's Version of Trust Agreement*, p. 1. It follows, Fidelity argues, that NCVA retains an interest in the subject of this action and that NCVA's presence is necessary to determine whether or not a breach has occurred. *Fidelity's Reply*, pp. 4-5.

Fidelity's arguments are well-taken. At this stage of the litigation, it is unclear which version of the Trust Agreement, if either, governs the parties' relationship with each other and with NCVA. If *Fidelity's Version of Trust Agreement* is the operative contract, then Dealers must establish NCVA's default before Dealers has authority to withdraw funds from the Trust Account. Although Dealers minimizes the differences between the two versions of the Trust Agreement, *Fidelity's Version of Trust Agreement*, pp. 1-2, demonstrates that the Trust Agreement is "made for the benefit" of both Dealers and NCVA and Dealers is not entitled to any funds in the absence of NCVA's default. Stated differently, NCVA retains an interest in any funds deposited in the event that it is not determined to be in default. Indeed, even Dealers concedes that NCVA may be a necessary party if *Fidelity's Version of Trust Agreement* is authentic. *See Exhibit G*, PAGEID#:256 (letter dated December 11, 2013, from Dealers' counsel addressed to Fidelity's counsel stating, *inter alia*,

9

that "Your argument that N.C. & Va. Warranty is a necessary party, at best might apply if the 'authentic' Trust Agreement is the one you claim is authentic."), attached to *Fidelity's Reply* (emphasis in the original).

Dealers' insistence that NCVA never deposited any funds into the Trust Account does not persuade this Court that NCVA has no interest relating to the subject of this action.  Contrary to Dealers' position, it is unclear, based on the present record, whether or not NCVA deposited funds. Dealers contends that "there are no funds in the Trust Account" because "Fidelity claims that NCVA never deposited any money with it[.]"  *Dealers' Opposition*, pp. 6-7 (citing *Exhibit C*, PAGEID#:204 (Fidelity's answer to Request to Admit No. 17), attached to *Berliner Affidavit*).  Dealers, however, oversimplifies Fidelity's position regarding the trust funds. Fidelity admits that no funds were deposited directly with Fidelity, but goes on to state that it understood that a trust account had been established with a different entity, *i.e.,* Interactive Brokers:

> 17.  Admit that no assets were ever deposited or maintained in the Trust Account at all times at your United States offices or branches.
>
> **Answer:   Admit only that no assets were deposited directly with Fidelity Bank or its branches.  Fidelity understood that an account that had been established at Interactive Brokers when U.S. Bank served as trustee that was to be transferred to its name, which Fidelity would have maintained through its United States offices.**

*Exhibit C*, PAGEID#:204, attached to *Berliner Affidavit*.  *See also Exhibit A*, PAGEID#201 (Fidelity's answer to Interrogatory No. 19 of Dealers' First Set of Interrogatories, which states, *inter alia*, "it was Defendant's [Fidelity's] understanding that funds of the purported trust account were held in a custodial account at Interactive Brokers[.]").  Moreover,

10

Fidelity has presented evidence suggesting that Tray Thomas, NCVA's financial representative, may have "improperly diverted [NCVA's] funds from the custodial account at Interactive Brokers [the Trust Account.]" *Motion to Join*, pp. 4-5 (citing, *inter alia*, *Exhibits D*, *E*, *F*, attached thereto; *Exhibits B* and *D*, attached to *Complaint*).  In short, based on the present record, the Court cannot conclude that NCVA, a signatory to the Trust Agreement, has no interest relating to the subject of the action simply because NCVA may not have deposited funds directly with Fidelity. *See*, *e.g.*, *Showtime Game Brokers, Inc. v. Blockbuster Video, Inc.*, 151 F.R.D. 641, 646-47 (S.D. Inc. 1993)(finding that absent party had a legally protected interest in the amount in controversy because the litigation would determine the amount that party would eventually retain).

Moreover, the Court is not, under these circumstances, persuaded that Fidelity bears no risk of double, multiple, or inconsistent obligations if NCVA is not joined because, *inter alia*, Dealers does not seek property belonging to or possessed by NCVA. *See Dealers' Opposition*, pp. 8-11. Because NCVA has an interest in the trust funds, NCVA could seek legal recourse against Fidelity should Fidelity turn over such funds to Dealers. *See*, *e.g.*, *William Chris Trucks v. Canadian Bank*, 98 F.R.D. 584, 585 (N.D. Ill. 1983) (finding Rule 19(a) satisfied where a judgment ordering the defendant bank to transfer funds "would, as a practical matter, impair or impede [the absent party's] ability to protect its interest in any such funds" and "might expose the [defendant] Bank to inconsistent obligations").

Dealers also contends that any such claim by NCVA against Fidelity

11

is purely speculative, especially since NCVA has purportedly known since "Spring 2012" that the funds were gone and has had ample time to join the current litigation and has chosen not to do so. *Dealers' Opposition*, pp. 10-11. However, based on the present record, this Court cannot say with confidence that NCVA will not pursue a claim against Fidelity in the future. *See Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1346-47 (6th Cir. 1993)(holding that the likelihood that absent signatories to a treaty might seek legal recourse against current parties to the lawsuit was not speculative).

Dealers also takes the position that any potential claim asserted by NCVA against Fidelity "cannot be successful" because NCVA authorized Tray Thomas, the person who may have improperly diverted the trust funds, to act on NCVA's behalf. *Dealers Opposition*, pp. 9-10 (citing *Exhibits B* and *H*, attached to *Berliner Affidavit*). However, Dealers is unduly dismissive of any such claim, particularly in light of the limited record presently before the Court.

In short, the Court concludes that NCVA is a necessary party within the meaning of Rule 19(a).

### B. Joinder of NCVA Is Feasible

The Court must next determine if NCVA's joinder is feasible, *i.e.*, whether NCVA "is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). *See also Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). The parties do not disagree that this Court would have personal jurisdiction over NCVA, but apparently

do disagree on whether or not NCVA's joinder would destroy this Court's diversity jurisdiction. Dealers is an Ohio corporation and NCVA and Fidelity are corporations organized under the laws of North Carolina. *Complaint*, ¶¶ 3-4; Insurance Agreement, PAGEID#:161. Fidelity argues that NCVA must be joined as a defendant in this action because NCVA's claims to the funds conflict with those of Dealers and because Dealers must prove NCVA's default. *Motion to Join*, pp. 1, 9-10; *Fidelity's Reply*, pp. 1-2, 8. Dealers, however, contends that NCVA's proper role in this litigation would be that of a plaintiff (which would destroy diversity jurisdiction) because its joinder by Fidelity is based on its interests adverse to NCVA. *Dealers' Opposition*, pp. 11-12.

Fidelity's arguments are well-taken. As discussed *supra*, if *Fidelity's Version of Trust Agreement* is the operative contract governing the relationship between the parties, the Trust Agreement is intended for the benefit of Dealers and NCVA and Dealers may withdraw funds only upon NCVA's default and notice to NCVA and to Fidelity. *Id*. at 2. In other words, no funds belong to Dealers unless, *inter alia*, NCVA defaults. The Court concludes that the interests of Dealers and NCVA conflict and, under these circumstances, that NCVA should be joined as a defendant rather than as a plaintiff. To the extent that NCVA, once joined as a party, wishes to pursue a claim against Fidelity, it may file a crossclaim under Rule 13(g) of the Federal Rules of Civil Procedure.[1]

---

[1] Having concluded that NCVA is a necessary party and that joinder is feasible, the Court need not determine whether NCVA is, technically, an indispensable party.

13

**WHEREUPON**, *Defendant's Motion to Join a Necessary Party or to Dismiss for Failure to Join a Necessary and Indispensable Party*, ECF 17, is **GRANTED**. Within 21 days of the date of this *Opinion and Order*, Dealers shall file an amended complaint joining as a defendant N.C. & VA. Warranty, Inc.

September 26, 2014 *s/Norah McCann King*
Norah M<sup>c</sup>Cann King
United States Magistrate Judge

14